# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUB INTERNATIONAL MOUNTAIN STATES LIMITED, | ) Case No.<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| HANNAH SASS, | )<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Hub International Mountain States Limited ("**HUB**"), a Wyoming corporation, for its Complaint against Hannah Sass (aka Rowell), states as follows:

## PARTIES

1. HUB is a leading insurance brokerage providing an array of property, casualty, risk management, life and health, employee benefits, investment, and wealth management products and services across the mountain west and mid-west regions of the United States, including Nebraska.

2. HUB is a Wyoming corporation with its principal place of business located in Billings, Montana.

3. Upon information and belief, Sass is a citizen of Nebraska who is domiciled and resides at 706 190th Street, Eagle, Nebraska 68347.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over the matter under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.

5. This Court has personal jurisdiction over Sass and venue is proper in this District under 28 U.S.C. § 1391(b) because Sass is a resident of Nebraska and because the parties agreed pursuant to the contract which forms the basis of this lawsuit to the exclusive venue of the federal and state courts located in Omaha, Nebraska. (*See* Confidentiality and Non-Solicitation Agreement ("**Agreement**"), a true and correct copy of which is attached hereto as **Exhibit 1** at Section 10(a).)

## EVENTS GIVING RISE TO THIS ACTION

6. On or about December 1, 2017, Sass became an employee of HUB after HUB acquired the assets of Sass's former employer, Wells Fargo Insurance, Inc. ("**Wells Fargo**").

7. At HUB, Sass was a producer, responsible for advising, brokering and selling insurance products to clients. Sass focused primarily on selling crop insurance to farmers.

8. As a condition of Sass's employment with HUB, her access to HUB's Confidential Information (as defined in the Agreement), and access to HUB's Clients (as defined in the Agreement), Sass entered into the Agreement. *See* **Ex. 1**.

9. Pursuant to the Agreement, Sass agreed, among other things, that both during and for two years after termination of her HUB employment, Sass:

> shall not, directly or indirectly, either for Employee's own benefit or on behalf of any other person or entity: (1) solicit any Client with whom Employee had personal contact of any kind for the purpose of doing business on behalf of the Company at any time during Employee's employment with the Company for or on behalf of an existing or prospective Competitive Business; (2) except in connection with Employee's employment by the Company and for the benefit of the Hub Group, accept a broker or agent of record appointment for the placement of insurance for, place or broker insurance on behalf of, or provide insurance administrative functions or consulting services to, any Client; or (3) interfere with or damage or attempt to interfere or damage any member of the Hub Group's business relationship with any Client with whom Employee had personal contact of any kind for the purpose of doing business on behalf of the Company at any time during Employee's employment with the Company.

(Agreement, § 5(b).)

10. For purposes of the Agreement, "Client" is defined to mean:

> … any person or entity who or which is, or at any time during the twelve (12) month period immediately preceding the date of termination of Employee's employment was, a client of the Seller, the Company or any member of the Hub Group and with whom Employee had personal contact on behalf of the Company or any other member of Hub Group. …

(Agreement, § 5(a)(i).)

11. By executing the Agreement, Sass acknowledged and agreed that:

> … (1) the Company and the other members of the Hub Group are engaged in highly competitive businesses; (2) the covenants of this Section 5 are reasonable as to subject matter, geographic area and length of time and are necessary to protect the trade secrets, Confidential Information, substantial relationships and goodwill with Clients, and other legitimate business interests of the Company and other members of the Hub Group; (3) the covenants of this Section 5 will not interfere unreasonably with Employee's ability to earn a livelihood; (4) but for Employee's agreement to comply with the covenants of this Section 5, the Company would not have employed Employee; and (5) the existence of any claim or cause of action of Employee against the Company, whether based on this Agreement or otherwise, will not constitute a defense to the Company's enforcement of the covenants of this Section 5.

(Agreement, § 5(d).)

12. Sass also agreed that if she engaged in any activity prohibited by Section 5(b) of the Agreement – the customer non-solicit provision:

> … Employee shall pay to the Company as liquidated damages and not as a penalty, an amount equal to two (2) times the Lost Revenues (as defined below) lost as a direct or indirect result of such prohibited activity. Employee acknowledges and agrees that such amount is a reasonable calculation of the Company's liquidated damages and not a penalty having regard to the standards of the insurance brokerage industry and given the interest of the Company in maintaining its client base and the future profits that would be foregone by the Company if Employee violates any provision of Section 5(b).

> "Lost Revenues" means the gross commissions and fees generated by or attributable to any Client during the twelve-month period ending on the date on which Employee first acted in violation of this Agreement or, if higher, the gross commissions and fees the Company reasonably anticipated generating, in the absence of Employee's violation of this Agreement, during the twelve-month period beginning on the date on which Employee first acted in violation of this Agreement.

(Agreement, § 6(a)(i).)

13. On December 28, 2023, Sass's employment terminated after she resigned. Shortly thereafter, on January 8, 2024, HUB sent Sass a letter to remind her of her continuing obligations to HUB. A true and correct copy of the January 8, 2024 letter is attached hereto as **Exhibit 2**.

14. Unfortunately, Sass ignored her obligations to HUB and the letter from HUB to remind her of the same. Since leaving HUB, Sass created an insurance brokerage business called R Bar S Insurance, LLC ("**RBS**"). Upon information and belief, RBS was established by Sass to directly compete against HUB.

15. Specifically, HUB learned that Sass is soliciting HUB Clients to purchase competitive products and services through RBS. Sass' unlawful solicitations have resulted in the loss of multiple Clients who have moved their business from HUB to Sass and RBS.

16. On April 5, 2024, HUB, through outside counsel, again wrote Sass to demand that she immediately cease and desist from breaching her Agreement by soliciting and accepting business from Clients. A true and correct copy of the April 5, 2024 letter to Sass is attached hereto as **Exhibit 3**. Sass neither responded nor complied with HUB's request.

### COUNT I: BREACH OF CONTRACT (Agreement)

17. HUB hereby incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

18. The Agreement is a valid and enforceable contract.

19. HUB has performed all material obligations required of it under the Agreement.

20. Sass breached Section 5(b) of the Agreement by, among other things, soliciting Clients of HUB whom she worked with at HUB to move their business to RBS and accepting broker of record appointments on behalf of those same HUB Clients.

21. As a direct and proximate result of Sass's breach of the Agreement, HUB has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, HUB prays for judgment against Defendant Hannah Sass as follows:

1. For liquidated damages as provided under Section 6(a) of the Agreement;

2. For prejudgment and post-judgment interest at the rate authorized by law;

3. For HUB's reasonable attorneys' fees;

4. For costs of suit incurred herein; and

5. For such other relief as the Court deems just and proper.

Dated:  May 1, 2024                                    HUB INTERNATIONAL MOUNTAIN
                                                       STATES LIMITED, Plaintiff,

By: _/s/ John C Dunn_____
   John C. Dunn, Neb. #26025
   Patrice D. Ott, Neb. #24435
   KOLEY JESSEN P.C., L.L.O.
   One Pacific Place, Suite 800
   1125 South 103rd Street
   Omaha, NE 68124-1079
   (402) 390-9500
   (402) 390-9005 (facsimile)
   Patrice.Ott@koleyjessen.com
   John.Dunn@koleyjessen.com

   AND

   Marcus L Mintz (to be admitted *pro hac vice*)
   Seyfarth Shaw LLP
   233 S. Wacker Drive, Suite 8000
   Chicago, IL  60606
   (312) 460-5000
   mmintz@seyfarth.com


   Attorneys for Plaintiff

6